# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joanna Reis, | No. CV-17-0594-TUC-LCK |
| Plaintiff, | **ORDER** |
| v. | |
| Nancy A. Berryhill, | |
| Defendant. | |

Plaintiff Joanna Reis filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). (Doc. 1.) In response, Defendant requested a remand for further proceedings, to which Plaintiff replied seeking a remand for payment of benefits. (Docs. 22, 23.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 14.) Based on the pleadings and the administrative record, the Court remands this matter for benefits.

## PROCEDURAL HISTORY

Reis filed an application for Disability Insurance Benefits (DIB) in March 2014. (Administrative Record (AR) 187.) She alleged disability from September 20, 2013. (*Id.*) Reis's application was denied upon initial review (AR 60-80) and on reconsideration (AR 81-102). A hearing was held on June 9, 2016. (AR 41-59.) Subsequently, the ALJ found that Reis was not disabled. (AR 20-31). The Appeals Council denied Reis's request to review the ALJ's decision. (AR 1.)

## FACTUAL HISTORY

Reis was born on June 23, 1976, making her 37 years of age at the onset date of her alleged disability. (AR 187.) Reis has a college degree and worked most recently in a clinical position with COPE Community Services from 2007 to 2013. (AR 210.)

The ALJ found that Reis had the severe impairments of other disorders of the nervous system, obesity, cervical disorders, tardive dyskinesia, chronic pain, obstructive sleep apnea, affective disorders, and anxiety disorders. (AR 22.) The ALJ determined Reis had the Residual Functional Capacity (RFC) to perform light work but could balance and stoop only frequently; climb ramps/stairs, kneel, crouch, and crawl occasionally; and never climb ladders/ropes/scaffolds. (AR 24.) The ALJ stated that Reis could understand, remember, and carry out simple instructions, respond appropriately to supervisors, coworkers, and work situations, and maintain concentration, persistence, and pace for two-hour periods without a break. (AR 24-25.) The ALJ concluded at Step Five, based on the testimony of a vocational expert, that Reis could perform work available in the national economy. (AR 30-31.)

## STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate DIB claims. 20 C.F.R. § 404.1520; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing she (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes her from performing his past work. 20 C.F.R. § 404.1520(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

**DISCUSSION**

Reis argues the ALJ committed three errors: (1) he failed to provide clear and convincing reasons for rejecting her credibility; (2) he erred in giving reduced weight to treating and examining physician opinions; and (3) he failed to include all of Reis's limitations in the RFC.

**Credibility**

Reis argues the ALJ failed to provide clear and convincing reasons to reject her testimony. In general, "questions of credibility and resolution of conflicts in the testimony are functions solely" for the ALJ. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). However, "[w]hile an

ALJ may certainly find testimony not credible and disregard it . . . [the court] cannot affirm such a determination unless it is supported by specific findings and reasoning." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884-85 (9th Cir. 2006); *Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (requiring specificity to ensure a reviewing court the ALJ did not arbitrarily reject a claimant's subjective testimony); SSR 96-7p. "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

Initially, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell*, 947 F.2d at 344). The ALJ found Reis had satisfied part one of the test by proving an impairment that could produce the symptoms alleged. (AR 29.) Next, if "there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281, 1283-84 (9th Cir. 1996)). Here, the ALJ did not make a finding of malingering. Therefore, to support his discounting of Reis's assertions regarding the severity of her symptoms, the ALJ had to provide clear and convincing, specific reasons. *See Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014); *Vasquez v. Astrue,* 572 F.3d 586, 591 (9th Cir. 2008) (quoting *Lingenfelter*, 504 F.3d at 1036).

The ALJ discounted Reis's credibility because he found that her asserted limitations were inconsistent with activities described to caregivers and her actions during a camping trip. (AR 29.) Reis was filmed in March 2014, in relation to a disability application, while at a reenactment called the Estrella War event. The ALJ summarized the video as showing her cooking, cleaning dishes, walking, interacting with other people, and moving items into her vehicle, including bending at the waist to do so. (AR 26.) The ALJ also referenced Reis's August 2014 statements that she was an SCA (Society for Creative Anachronism)

reenactor, enjoyed crocheting, cross-stich, embroidery, cooking, camping, games, and spending time with family; and Reis's 2015 statements to a therapist that she had been going to MeetUp events twice a month (playing card games) (AR 1410), had done some events with the SCA, and was spending time with a friend and her children (AR 1407). (AR 26.)

The ALJ found these reported activities inconsistent with Reis's limitations as stated in October 2014 and June 2016, that she could not read or sit at a computer for more than 15 minutes; her pain was 8-9 out of 10; she could lift a gallon of milk but would use both hands; on a typical day, she ate, went to a medical appointment (or left the house once per day), did one chore and/or dishes, rested, lay down, watched television, tried to prepare dinner, and slept; she spent half her day laying down; she could do activities only for short periods of time; vacuuming and mopping aggravated her pain; she could stand and sit for 30 to 60 minutes at a time; her conditions impacted her ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, stair-climb, see, complete tasks, concentrate, follow instructions, use her hands, get along with others, and her memory; she drove when able; she failed in her 2014 work attempt because she could not type, hold the phone to her ear, read the computer, or write; and her head would become locked in a position during the day and moving it caused headaches. (AR 25-26.)

If a claimant's activities contradict her testimony, or the claimant spends a substantial portion of her day at activities that involve skills transferable to a work setting, those circumstances can form the basis for an adverse credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found that Reis's activities of daily living were not consistent with her allegations of complete disability. The Court concludes the ALJ's finding was error. There was no contradiction between Reis's ability to socialize periodically by playing cards, going to one (or more) reenactment events, or meeting a friend, and her statements that she can be active for only short periods of time. She reported trying to get out of the house once a day, including doctor's appointments. Similarly, the fact that she enjoys crafts is not inconsistent with her reported limitations.

Because Reis's activities did not contradict her symptom testimony that did not provide a clear and convincing reason to reject her credibility.

Further, there is not substantial evidence to support the ALJ's summary of Reis's activities. The investigator's narrative for the week-long Estrella War event covered February 25 to March 2, 2014. (AR 1126-30.) During those days, Reis was observed interacting with people, eating, riding in a golf cart, sitting in a chair, visiting merchant tents for 23 minutes, using the bathroom, showering once, wiping her plate clean once, making two sandwiches, wiping down plates and pans and using cooking utensils over the course of 24 minutes, bending at the waist several times, carrying various items around the event, and packing items into her car. (*Id.*) Reis's observed "cooking" and "cleaning" was quite limited given her presence at the event for six days. In a post-hearing letter, Reis explained that others were assigned kitchen duty at the same time, which allowed her to take breaks as needed. (AR 344.) Additionally, there is no evidence to document the weight of any items she was seen carrying; Reis acknowledged she could lift items that were not too heavy, and she explained that she needed assistance with her tent and loading/unloading her vehicle. (*Id.*) Additionally, in a May 2014 function report (2 months after the Estrella War event) and in the post-hearing letter to the ALJ, Reis stated that she had sold her tent because the physical exertion and pain involved in tent camping was too great. (AR 230, 344.)

Next, when Reis stated: "I am an SCA Renaissance reenactor, I like to crochet, cross-stich, embroider, cook, camp, play games, be with family," it was to summarize her interests and skills during an intake assessment with CODAC. (AR 907.) It was not a statement of how she spent her time. At the same appointment, she reported that she would try to do a craft "but it usually doesn't happen," and that pain impeded her ability to do craft activities. (AR 906, 914.)

The ALJ cited only one reason to discount Reis's credibility and it falls short of being a clear and convincing reason and it is not supported by substantial evidence. Therefore, the ALJ erred in rejecting Reis's symptom testimony.

**Medical Opinions**

Reis argues the ALJ failed to provide specific legitimate reasons to reject the opinion of treating physicians Dr. David Siegel and Dr. Sudeshna Bose and examining physician Dr. Scott Sherman. The opinions of treating and examining physicians generally are afforded more weight than a non-examining or reviewing physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of Drs. Sherman, Siegel, and Bose were contradicted by that of reviewing physicians Drs. Martha Goodrich and Lloyd Anderson. (AR 75-77, 96-99.) When there are contradictory medical opinions, to reject a treating or examining physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Lester*, 81 F.3d at 830-31; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

On January 31, 2014, Dr. Sudeshna Bose, a treating physician, determined that Reis's tardive dyskinesia and dystonia were unlikely to resolve because they had persisted for more than one year. (AR 644.) Dr. Bose noted that Reis's multiple medications had cognitive side effects and that her depression was poorly controlled. (*Id.*) She concluded Reis could not work and should continue on short-term disability "because of the cognitive slowing from polypharmacy, her pain syndrome, and psychiatric condition." (*Id.*) The ALJ discounted the opinion of Dr. Bose because the doctor accepted Reis's complaints and her report was inconsistent with Reis's actions at the Estrella War event. (AR 28.)

Dr. David Siegel examined Reis on October 22, 2014. He noted her head tilted right at rest and returned to that position 30 seconds after rotation to the left. (AR 1345.) She had tenderness in the cervical muscles, decreased range of motion to the left, and pain with neck movement. (AR 1345.) Dr. Siegel diagnosed spondylosis of cervical region; cervicalgia, headache, and cervical dystonia. (AR 1345-46.) He opined that she had a "refractory disabling problem." (AR 1346.) Before offering his opinion, Dr. Scott Sherman examined Reis in May 2016, and reviewed "voluminous" records. (AR 1428, 1436.) He diagnosed tardive dyskinesia, including severe tardive dystonia. (AR 1430.) Dr. Sherman evaluated Reis as having "marginal or no ability to perform domestic responsibilities";

found that all activities of daily living were impaired and some impossible; activities outside the home were limited with some impossible; and reading was limited to a few sentences. (AR 1431.) He noted that patients with the level of severity exhibited by Reis are "rarely, if ever" able to perform competitive employment. (*Id.*) Dr. Sherman identified Reis as having difficulty with fine motor control and coordination. (AR 1433.) He recorded her need for treatment because the condition was disabling. (AR 1434.) Dr. Sherman opined that Reis's impairments were of physical not psychological origin. (AR 1436.) The ALJ gave little weight to the opinions of Drs. Siegel and Sherman because they "apparently relied quite heavily on the subjective report of symptoms and limitations" and "seemed to uncritically accept as true . . . what the Claimant reported." (AR 27, 28.) Because the ALJ found Reis not credible, he gave little weight to these doctors' opinions. (AR 27, 28.)

Defendant conceded that the ALJ erred in his evaluation of the opinions of Drs. Bose and Siegel. Defendant did not mention the opinion of Dr. Sherman. However, it was rejected by the ALJ on the identical basis as Dr. Siegel's opinion; therefore, Defendant's concession necessarily applies to his opinion as well. Discounting a doctor's opinion because it is based on a claimant's symptom report is only legitimate if a claimant's self-reports are not credible. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). Because the ALJ's credibility finding was not valid, it was error for the ALJ to reject Dr. Sherman's opinion (and the opinions of Drs. Siegel and Bose) because it was based on Reis's self-reports. Additionally, Dr. Bose was a treating physician, and Drs. Siegel and Sherman examined Reis and reviewed prior medical records; therefore, they did not rely solely on Reis's self-reports. (AR 1345, 1428.) As conceded in part by Defendant, the ALJ erred in rejecting the opinions of Drs. Bose, Siegel, and Sherman without providing specific, legitimate reasons supported by substantial evidence.

**CONCLUSION**

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*,

537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true physician opinions and a claimant's testimony that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 594; *Garrison*, 759 F.3d at 1021 (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected). The Ninth Circuit holds that application of the credit as true rule is *mandatory* unless the record creates serious doubt that the claimant is disabled. *Garrison*, 759 F.3d at 1021.

Here, all the requirements of the credit-as-true rule are satisfied. The Court found the ALJ rejected the opinions of Drs. Bose, Siegel, and Sherman without specific, legitimate reasons supported by substantial evidence and Reis's symptom testimony without clear and convincing reasons. There are no outstanding issues that require resolution before the question of disability can be resolved.

The Court first looks at Reis's symptom testimony. Reis testified that she could sit or stand for a maximum of 60 minutes at a time and needed to lay down during the day. (AR 49, 257.) Reis reported an inability to lift more than ten pounds (AR 49, 231) or to use her hands bilaterally (AR 51). The vocational expert testified that a person with those limitations could not meet the requirements of competitive employment. (AR 58.) Additionally, in function reports, Reis stated she could pay attention for no more than 30 consecutive minutes. (AR 231, 259.) The vocational expert testified that a person was not employable if they could not concentrate for two hours at a time. (AR 57.)

Next, the Court looks at the opinions of Drs. Sherman, Siegel, and Bose. Dr. Sherman found Reis's condition disabling and opined that she would not be able to sustain employment. Similarly, Dr. Bose concluded Reis was unable to work. Dr. Siegel determined Reis had a "refractory disabling problem," meaning her impairments were

1    disabling and had not responded to treatment. Crediting these doctors' opinions as true, it
2    is clear the ALJ would be required to find Reis disabled. For these reasons, Reis is
3    necessarily disabled when her symptom testimony and the opinions of Drs. Sherman,
4    Siegel, and Bose are credited as true.

5    Defendant argues the credit-as-true rule does not apply because there are
6    "significant factual conflicts" in the record. In support of that argument, Defendant cites
7    an examining physician who found Plaintiff could perform the physical requirements of
8    work. While true, that same doctor concluded Reis was unable to work due to
9    psychological impairments. (AR 1137-38.) Defendant also cites a non-examining,
10   reviewing physician that concluded Reis could work without restriction. (AR 1266-71.)
11   She fails to acknowledge the ALJ found that opinion entitled to little weight. (AR 28.) The
12   remaining conflicting evidence is the opinions of the State agency medical consultants,
13   upon which the ALJ relied. But, the opinions of non-examining physicians are not, by
14   themselves, substantial evidence to reject the opinions of examining or treating physicians.
15   *Lester*, 81 F.3d at 831. The opinions from doctors that treated or examined Reis were in
16   accord that she was unable to maintain employment.

17   Next, Defendant argues there is an unresolved conflict between Reis's symptom
18   testimony and her observed activities. The Court found the ALJ's reliance on that alleged
19   conflict was error. Defendant implicitly acknowledged that the ALJ's credibility finding
20   was erroneous, when she stated that the ALJ erred in his rejection of Dr. Siegel's opinion.
21   (Doc. 22 at 2.) The only basis cited by the ALJ for rejecting Dr. Siegel's opinion was that
22   Reis's subjective complaints were not credible. When the Defendant acknowledged that
23   was not a valid basis to reject Dr. Siegel's opinion, she tacitly conceded that the ALJ's
24   credibility finding also was invalid. *Cf. Bray*, 554 F.3d at 1228 (finding it legitimate to
25   discount a doctor's opinion because it is based on a claimant's symptom report only if the
26   self-reports are not credible). Therefore, in arguing that this matter should be remanded for
27   further proceedings, it was disingenuous for Defendant to rely upon the ALJ's erroneous

conclusion that Reis's actions conflicted with her testimony. Regardless, the Court concluded there was no such conflict.

Finally, Defendant suggests the ALJ could obtain a consultative exam upon remand; however, she does not argue that the record has not been fully developed. In fact, the record is extensive at over 1500 pages, with no critical evidence absent. (Doc. 16.) What Defendant seeks is a remand to allow the ALJ to reevaluate the medical testimony and Reis's symptom testimony. (Doc. 22 at 2 ll. 15-18.) This is contrary to governing law, which holds that the Commissioner is not entitled to a second chance to justify his improper rejection of claimant symptom testimony and medical opinions. *See Garrison*, 759 F.3d at 1021-22 (rejecting argument that a remand to allow ALJ to reconsider testimony he improperly rejected qualifies as "useful purpose"); *Moisa*, 367 F.3d at 887 ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility."); *Varney v. Sec'y Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988) (finding it is "reasonable and desirable" for an ALJ to articulate any legitimate reasons to find a claimant untruthful in his original decision).

After considering the entire record, the Court does not have serious doubt as to whether Reis is disabled.[1] Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** for an award of benefits. The Clerk of Court should enter judgment and close this case.

Dated this 14th day of March, 2019.

*Lynnette C. Kimmins*
Honorable Lynnette C. Kimmins
United States Magistrate Judge

---

[1] Reis raised a third claim, that the ALJ erred in formulating her RFC. Because the case is fully resolved on the other two claims, the Court does not reach that argument.